# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### CIVIL ACTION NO. 3:20-CV-567-DCK

MICHAEL S. CUSTODIO,                         )
                                             )
                Plaintiff,    )
                                             )       **ORDER**
   v.                                    )
                                             )
KILOLO KIJAKAZI, Acting Commissioner         )
of Social Security Administration,           )
                                             )
             Defendant.    )
_____      )

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 13) and Defendant's "Motion For Summary Judgment" (Document No. 16). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will direct that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I.     BACKGROUND

Plaintiff Michael S. Custodio ("Plaintiff" or "Custodio"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1).

This case has a complicated procedural history, involving a previous application for a period of disability and disability insurance benefits that is not presently before this Court. On August 26, 2014, Plaintiff filed a previous application for disability insurance benefits, alleging a disability onset date of August 1, 2014. (Transcript of the Record of Proceedings ("Tr.") 15) "An

Administrative Law Judge initially denied this application on February 12, 2016." Id. Plaintiff ultimately appealed the unfavorable administrative decision to the United States District Court for the Middle District of Florida, which remanded the case. See Custodio v. Comm'r of Soc. Sec., 2017 WL 2406986 (June 2, 2017). On remand from the federal district court in Florida, a second Administrative Law Judge again denied Plaintiff's previous application on May 21, 2018. (Tr. 15). "The Appeals Council denied a request for review and the claimant did not appeal to the district court level." Id.

On or about February 12, 2019, Plaintiff filed a new application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning August 1, 2014 – the same disability onset date alleged in the first application. (Tr. 15). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on July 31, 2019, and again after reconsideration on September 23, 2019. (Tr. 15). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on the evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 219).

Plaintiff filed a timely written request for a hearing on October 14, 2019. (Tr. 15, 227-28). On May 14, 2020, Plaintiff appeared and testified at a telephonic hearing before Administrative

Law Judge Darrell Fun (the "ALJ"). (Tr. 15-32, 59-105). In addition, Lisa Duke Cary, a vocational expert ("VE"), and Daniel A. Bridgman, Plaintiff's attorney for the hearing, appeared at the telephonic hearing. Id.

The ALJ issued an unfavorable decision on May 28, 2020, denying Plaintiff's claim. (Tr. 12-32). On June 19, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on September 15, 2020. (Tr. 1-3, 293-96). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on October 14, 2020. (Document No. 1). The parties consented to Magistrate Judge jurisdiction on July 20, 2021, and this case was reassigned to the undersigned as presiding judge. (Document No. 15).

"Plaintiff's Motion For Summary Judgment" (Document No. 13) and "Plaintiff's Memorandum Of Law" (Document No. 14) were filed June 1, 2021; and the Defendant's "Motion For Summary Judgment" (Document No. 16) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 17) were filed July 29, 2021. Plaintiff declined to file a reply brief, and the time to do so has lapsed. See Local Rule 7.2 (e).

The pending motions are now ripe for review and disposition.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards.

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. <u>Hays</u>, 907 F.2d at 1456 (4th Cir. 1990); <u>see also</u>, <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Smith v. Heckler</u>, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting <u>Perales</u>, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. <u>Hays</u>, 907 F.2d at 1456; <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 1, 2014 and December 31,

2019, the latter of which is Plaintiff's date last insured.[1] (Tr. 15-16); 42 U.S.C. § 423(a)(1)(A) (indicating that individuals must be insured for disability insurance benefits to be entitled to such benefits). However, given that Plaintiff filed a previous application for disability insurance benefits, alleging the same disability onset period, the period in question here is actually shorter. The Appeals Council denied review of Plaintiff's first application after an ALJ held a hearing following remand from a federal district court in Florida. Thus, the administrative finding on Plaintiff's first application that he was *not* disabled was rendered final as of May 21, 2018 – the date of the second ALJ's decision. See (Tr. 15, 134-59, 201-203). Indeed, ALJ Fun said as much: "[t]he prior decision of ALJ Neel remains final and binding and *res judicata* applies with regard to the period through May 21, 2018." (Tr. 16). The ALJ rendering the decision under review here thus restricted his analysis of whether Plaintiff was under a disability to the period May 22, 2018 through December 31, 2019. (Tr. 15); see Lively v. Sec. of Health and Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987) ("[i]t is by now well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases"). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)     whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at 1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 30-31).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since August 1, 2014, his alleged disability onset date.  (Tr. 18).  At the second step, the ALJ found that depression; adjustment disorder; anxiety; asthma; obstructive sleep apnea; and obesity were severe impairments.[2]  (Tr. 18).  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 19).

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a de minimis test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform medium work activity, with the following limitations:

> The claimant would need to avoid work tasks involving concentrated exposure to dust, toxic or caustic odors, and fumes as well as extremely hot, cold, or humid working environments. The claimant would also need to avoid exposure to hazardous work tasks, such as working at unprotected heights or with or near automated moving machinery, and avoid operating a commercial motor vehicle. The claimant retains the ability to respond appropriately to supervision and tolerate no more than occasional interaction with supervisors and coworkers and no more than superficial interaction with the public, which is defined as engaging in brief and short interaction or conversations of five (5) minutes or less, but not engaging in extensive or detailed conversations, such as customer service or sales. The claimant retains the ability to remain on task for two (2) hours at a time sufficiently to perform routine and repetitive unskilled work tasks with reasoning development level 2-3, but not at a production rate pace, such as automated conveyor belt or assembly line type of work. The claimant remains capable of adapting to routine work settings occasionally and is capable of using commonsense understanding to make work-related decisions, with routine meaning the performance of job tasks encompassed in and inherent to performing the job title as specified in the DOT.

(Tr. 22). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform his past relevant work as a cable installer/repairer, a mail handler, or a fork lift operator. (Tr. 29). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 30). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform

included a laundry worker, linen room attendant, dining room attendant, and sexton. (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 1, 2014, and December 31, 2019, the date last insured. (Tr. 31).

Plaintiff on appeal to this Court makes the following assignments of error: (1) "the ALJ's Residual Functional Capacity assessment [is not] supported by substantial evidence and frustrates meaningful review;" (2) "the ALJ's evaluation and statements regarding Mr. Custodio's symptoms improperly increased his burden of proof and contradicts the evidence of record;" and (3) "the ALJ failed to give persuasive, specific, valid reasons for rejecting Mr. Custodio's VA disability rating of 100% disabled." (Document No. 14, p. 4). The undersigned will discuss each of these contentions in turn.

## A.    Assignment of Error # 1

In the first assignment of error, Plaintiff argues that the ALJ's RFC evaluation was not supported by substantial evidence for three reasons. First, Plaintiff contends that "the ALJ erred by assessing Mr. Custodio's RFC pursuant to an incorrect framework and without explaining the related findings in the manner required by Social Security Regulations." Id. at p. 5. Second, Plaintiff argues that "the ALJ failed to logically explain how he considered the persuasiveness of Mr. Custodio's medical opinions." Id. Third and finally, the ALJ's RFC evaluation was flawed, Plaintiff alleges, because "the ALJ failed to consider and include all of Mr. Custodio's limitations due to his physical and mental impairments, despite contradictory evidence in the record." Id. The undersigned will analyze the arguments below, but will switch the order of Plaintiff's second and third arguments since the legal framework (Plaintiff's first point) and how well the ALJ conducted the analysis pursuant to this framework (Plaintiff's third point) are related.

8

### i.   Legal Framework Applied by the ALJ

Plaintiff argues that the ALJ relied on an incorrect legal framework to evaluate his RFC. Plaintiff cites a Fourth Circuit case to support his argument, contending that as in that case, "[t]he ALJ's reliance on SSR 16-3p [as in the present case] and failure to cite to or rely on SSR 96-8p and 20 C.F.R. § 416.945 was in error." Id. at p. 7 (citing Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021)).

Respectfully, the undersigned disagrees with Plaintiff. Defendant is correct – the ALJ applied the correct legal framework to formulate Plaintiff's RFC. See (Document No. 17, pp. 6-7). Indeed, as explained below in the following sub-section, the ALJ's analysis properly accounted for Plaintiff's functional impairments, just as the relevant regulation requires. The ALJ even cites to the proper regulation to guide his analysis – in contrast to Plaintiff's claims. See (Tr. 17) ("the undersigned must consider all of the claimant's impairments [in making his RFC determination], including impairments that are not severe (20 CFR…404.1545; SSR 96-8p)"). Furthermore, Plaintiff's argument that the ALJ failed to cite to 20 C.F.R. § 416.945 is misplaced. That regulation, just as Defendant contends, relates to "Title XVI of the Act, but [Plaintiff] filed under Title II of the Act." (Document No. 17, p. 6, n.5); see also Daniels v. Saul, 2021 WL 826775, at *4, n.1 ("20 C.F.R. § 416.945 addresses the RFC determination for Supplemental Security Income…applications; 20 C.F.R. § 404.1545 applies to DIB applications. The regulatory framework in both sections is the same."). The ALJ was thus correct to cite to 20 C.F.R. § 404.1545.

### ii.   ALJ's Consideration of Plaintiff's Functional Impairments

Plaintiff argues that the correct legal framework applicable to RFC formulation required the ALJ to "identif[y] the claimant's severe impairments [and then] to determine the extent to

9

which the claimant experienced limitations as a result of those impairments." (Document No. 14, p. 10) (citing Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016). Additionally, Plaintiff relies upon Dowling in arguing that the ALJ's RFC analysis was conducted incorrectly – failing, as in that case, to conduct the requisite "function-by-function" analysis. 986 F.3d at 388 (internal citation omitted). In Dowling, the Fourth Circuit found that the ALJ "erred by treating" two separate analyses as one – first, an evaluation of "a claimant's symptoms, and the extent to which the alleged severity of those symptoms is supported by the record," and second, "a symptom evaluation." Id. at 387.

The ALJ did not solely conduct a symptom evaluation, though, as Plaintiff's brief would suggest. See (Document No. 14, pp. 6-7). Indeed, as Defendant persuasively argues, "the ALJ based [his analysis of] Plaintiff's functional limitations on all the 'relevant' evidence, adequately considered Plaintiff's ability to meet the physical and mental requirements of work despite his impairments, and cited supporting evidence from the record." (Document No. 17, p. 8) (citing Tr. 19-29). Plaintiff identifies three limitations upon which he argues the ALJ failed to conduct a functional analysis. The undersigned will analyze those limitations and the ALJ's corresponding analysis below to determine whether the ALJ's function-by-function analysis was legally sufficient.

First, Plaintiff contends that the ALJ failed to evaluate the extent to which his asthma would impact his ability to "perform[] medium work for a full work-day, five days per week, despite his uncontrolled asthma, which was exacerbated by physical activity." (Document No. 14, pp. 10-11). Not so. The ALJ explicitly acknowledged Plaintiff's asthma impairment, but also acknowledged that other objective evidence in the record suggested that his asthma had a less severe impact upon his daily functioning than Plaintiff suggested. The ALJ found "despite some

10

asthma exacerbations requiring inpatient hospitalization *prior to the relevant period*, recent treatment records document that the claimant's asthma was controlled with inhalers and the record contains no evidence of recent emergency or inpatient treatment for this impairment." (Tr. 26) (emphasis added). Further, the ALJ noted Plaintiff's testimony that he could walk "as long as [he has his] inhalers with him…it's [the asthma] not that…that bad." (Tr. 80); see (Tr. 23). The RFC thus accounted for Plaintiff's apparent ability – based on his own testimony – to perform "a limited range of medium work," while also accounting for his need to be in a restricted "environment that precluded pulmonary irritants, weather extremes, and production rate paced work." (Tr. 29); (Document No. 17, p. 8).

The ALJ also considered the opinion of the consultative examiner, Dr. Karen Jones, who "found that Plaintiff did not have any exertional limitations." (Document No. 17, p. 9); (Tr. 28, 636-37). Despite Dr. Jones' opinion that Plaintiff did not need any exertional limitations, the ALJ "included further RFC limitations to account for Plaintiff's combined impairments based on the entire evidentiary record." (Document No. 17, p. 9); (Tr. 22). The RFC reflects this more restrictive view of Plaintiff's physical capabilities, given that the ALJ found that he could only perform "medium" work, rather than one of the other, more physically intensive categories of work. (Tr. 22); see 20 C.F.R. § 404.1567. Indeed, the fact that the ALJ's RFC was *more* restrictive than the consultative physician's opinion suggests that he conducted a circumspect analysis of the evidence in the record, considering his impairments, "severe and otherwise, and determin[ing], on a function-by-function basis, how they affect his ability to work." Monroe, 826 F.3d at 188; see also Signorello v. Comm'r of Soc. Sec'y, 2020 WL 4905401, at *5 (M.D. Fla. July 31, 2020) ("[t]he restrictive RFC reflects that the ALJ credited much of the record regarding Signorello's

mental limitations. In fact, the ALJ included more restrictive limitations in the RFC than the medical opinions suggested").

Plaintiff further contends that "the ALJ failed to adequately explain how Mr. Custodio 'retains the ability to respond appropriately to supervision and tolerate no more than occasional interaction with the public' despite the ALJ's finding that Mr. Custodio had marked limitation in interacting with others." (Document No. 14, p. 11). Additionally, Plaintiff makes a similar argument with respect to the ALJ's inclusion of Mr. Custodio's capability to adapt "to routine work settings occasionally" in the RFC, in contrast to the ALJ's "finding he had a moderate limitation in adapting or managing oneself." Id.

Just as with Plaintiff's asthma, the ALJ did not abdicate his duty to conduct a functional analysis on his social and mental impairments. Indeed, he satisfied his duty. In fact, the ALJ acknowledged that "claimant has a history of mental health impairments, including depression, adjustment disorder, and anxiety with a remote suicide attempt." (Tr. 24). Still, the ALJ highlighted that Plaintiff's most recent treatment records from the Department of Veterans Affairs ("VA") "from November 2019 and February 2020 [showed that] despite some medication non-compliance, and alleged worsening symptoms of depression, the claimant also reported 'stable' mental health symptomology and his depression was described as 'in remission.'" (Tr. 25 (citing Tr. 1662, 1666, 1671, 1684)). Additionally, the ALJ highlighted that despite allegations by Plaintiff in a functional report from 2019 about his inability to manage his personal care well, Plaintiff also indicated that "he could perform some household chores, such as washing dishes and making beds [on a good day], and grocery shop[ping]." (Tr. 21 (citing Tr. 352, 354, 355)). Further, the ALJ noted that Plaintiff's anxiety was improved with medication, as of a 2018 record from the VA. (Tr. 25 (citing Tr. 786)). Evidently, the ALJ satisfied his duty to "go through a function-by-

12

function analysis," as <u>Monroe</u> explains.  826 F.3d at 188.  The ALJ "examined the medical opinions and Plaintiff's testimony regarding [his] own medical conditions, mental capabilities, and Plaintiff's ability to continue normal activities in [his] daily life," in addition to treatment records. <u>Johnson v. Saul</u>, 5:18-CV-152-FDW, 446 F. Supp. 3d 29, 40 (W.D.N.C. 2020).

Clearly, then, in contrast to Plaintiff's claim that the ALJ "failed to assess Mr. Custodio's capacity to perform relevant functions, despite contradictory evidence in the record," the ALJ here quite clearly *did* assess Mr. Custodio's capacity to work, considering a wide range of evidence regarding his functional impairments.  (Document No. 14, p. 10).  Even if the undersigned would have formulated a different RFC were the undersigned to be conducting such an analysis, it is strictly within the ALJ's purview to articulate an RFC – and the Court must uphold that determination if it is supported by substantial evidence.  See <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) ("[i]n reviewing for substantial evidence, we do not undertake to…substitute our judgment for that of the Secretary").  The ALJ conducted an appropriate functional analysis of Plaintiff's work capabilities that was supported by substantial evidence.

### iii.    ALJ's Explanation of the Weight He Accorded the Medical Opinions

Plaintiff's brief seems to take issue with the way in which the ALJ weighted the opinions of various physicians.  <u>See</u> (Document No. 14, pp. 7-10).  Nonetheless, Plaintiff does not identify a specific error – he merely seems to disagree with the level of persuasiveness that the ALJ assigned each of the medical opinions.  As Defendant states, "[a]lthough Plaintiff disagrees with the ALJ's evaluation of the medical opinions and prior administrative medical findings, he fails to identify a specific error that would warrant remand."  (Document No. 17, p. 15); <u>see</u> <u>Mode v. Saul</u>, 5:20-CV-063-MOC, 2021 WL 2593809, at *3 (W.D.N.C. June 24, 2021) ("while Plaintiff may disagree with how the ALJ characterized these experts' opinions, there can be no doubt that

13

the ALJ considered the evidence"). Overall, Plaintiff's argument focuses on how the ALJ should have assigned greater weight to Vickie Nichols' opinion. (Document No. 14, pp. 9-10). The undersigned finds for the reasons explained below that the ALJ's assignment of weight to Ms. Nichols' opinion was consistent with the regulation dictating how ALJs must evaluate medical opinion evidence.

Since Mr. Custodio's instant claim was filed February 12, 2019, 20 C.F.R. § 404.1520c governs the evaluation of medical opinion evidence.[3] Pursuant to this regulation, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). To determine the persuasiveness of a medical opinion, the ALJ analyzes five factors:

> (1) supportability; (2) consistency; (3) relationship the medical source has with the claimant, including the (i) length, (ii) frequency, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors.

Id. at §§ 404.1520c(a), (c). "The most important factors" that an ALJ considers are supportability – "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)," the more persuasive the opinion – and consistency – how consistent the medical opinion is with other evidence in the

---

[3] The previous regulation governing the Social Security Administration's evaluation of medical opinion evidence – 20 C.F.R. § 404.1527 – was replaced by 20 C.F.R. § 404.1520c, which applies to all claims filed on or after March 27, 2017. See Dowling, 986 F.3d at 384, n.8. The previous regulation's "treating physician rule" – which accorded greater persuasiveness to a treating physician's opinion, so long as it met certain criteria – is no longer present in the new regulation. Wagoner v. Comm'r of Soc. Sec'y, 5:20-CV-145-RJC-DSC, 2022 WL 899456, at *4 (W.D.N.C. Mar. 28, 2022).

14

record.  Id. at  §§ 404.1520c(a), (c)(1).  An ALJ must specifically discuss supportability and consistency.  §§ 404.1520c(b)(2).

In accordance with the regulation, the ALJ properly considered Ms. Nichols' opinion.  For example, the ALJ discusses that Ms. Nichols' opinion that Plaintiff "would require constant breaks of undetermined length, be off-task twenty-five percent or more of the day and absent greater than four (4) days per month, require low stress work, and have marked to extreme limitations overall" was neither supported by her own notes nor consistent with the record in general.  (Tr. 28 (citing Tr. 1637, 1735)).  Indeed, the ALJ noted that "there is no indication that Ms. Nichols performed formal psycho-cognitive testing," thus rendering her assessment of Mr. Custodio's time spent on-task "speculative."  (Tr. 28).  The lack of such relevant, objective evidence goes to supportability.  Further, the ALJ indicated that there was "a large gap in [her] mental health treatment [of Plaintiff] from August 2014 to February 2019 and then only sporadic visits between then and March 2020."  (Tr. 28 (citing 1733-63)).  Given that the relationship of the opining examiner and the claimant is a relevant factor an ALJ can use to assess the persuasiveness of an opinion, the lack of frequent contact between Ms. Nichols and Plaintiff rightly diminished the persuasiveness of Ms. Nichols' opinion in the ALJ's eyes.  20 C.F.R. § 404.1520c(c)(3)(ii).  Finally, the ALJ found that Ms. Nichols' own treatment notes were inconsistent with her opinion about Plaintiff's near inability to work at all.  (Tr. 28).  The ALJ cited Ms. Nichols' treatment notes from November 2019, in which claimant stated that he was "able to work but not around people or bad weather."  Id. (citing Tr. 1738).  The ALJ did not make a legal error in assessing the persuasiveness of Ms. Nichols' opinion – indeed, he conducted his analysis in accordance with the regulation.

Substantial evidence thus supports the ALJ's determination of Plaintiff's RFC.

**B.     ALJ's Symptom Evaluation**

Next, Plaintiff argues that the ALJ erred in his symptom evaluation. See (Document No. 14, pp. 12-16). As Defendant states, Plaintiff's argument at a high level is "that the ALJ's symptom evaluation was improper because he applied an incorrect standard and failed to address all relevant evidence." (Document No. 17, p. 19). According to Plaintiff, "the ALJ improperly increased Mr. Custodio's burden of proof by requiring objective evidence to support his subjective complaints," and he "mischaracterized the evidence" by "cherrypick[ing] findings that supported his ultimate conclusion." (Document No. 14, p. 14). For the reasons explained below, the undersigned disagrees with Plaintiff – the ALJ applied the correct legal standard to evaluate Plaintiff's alleged symptoms. In essence, Plaintiff is asking this Court to reweigh the evidence because he disagrees with the ALJ's conclusion – a task that the Court is expressly forbidden to do.

The regulations mandate "a two-step process for evaluating an individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *3 (Mar. 16, 2016). The first step in that process involves "determining whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms." Id. Then, the second step involves an evaluation of "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim." Id. at *2. Notably, the regulation speaks to the role of objective evidence in the analysis: "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. at *5.

Objective evidence, then, or lack thereof, is "one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." Id.

Plaintiff's first argument, that the ALJ improperly increased his burden of proof on symptom evaluation by requiring "objective evidence" where none was required, misses the mark. The Fourth Circuit and the Social Security Administration's relevant regulations do *not*, as Plaintiff suggests, indicate that subjective evidence is *always* sufficient by itself to prove a disability. Indeed, where contrary objective evidence and other evidence suggests that the subjective evidence is not indicative of as severe or acute an impairment as a claimant alleges, an ALJ is entitled to weigh that contradictory, non-subjective evidence as he or she sees fit. According to the Fourth Circuit in Craig,

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Craig v. Chater, 76 F.3d at 595. Indeed, the Fourth Circuit's decision in Hines v. Barnhart that Plaintiff cites for the proposition that he may rely "exclusively on subjective evidence" to prove his symptoms are disabling even cites this language from Craig. Hines v. Barnhart, 453 F.3d 559, 565, n.3 (4th Cir. 2006). Evidently then, objective evidence is still "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595.

Moreover, in contrast to Plaintiff's contentions, the ALJ "did not discount the subjective evidence *solely* based on objective medical findings." (Document No. 17, p. 19) (internal quotations and citations omitted). Indeed, as Defendant asserts, "the ALJ considered the objective

17

evidence among other factors in his evaluation of Plaintiff's symptoms, including Plaintiff's treatment history, the measures he used to relieve his symptoms, his testimony, and his reports of activities." Id. Consideration of such other non-objective evidence is actually prescribed by the regulations when "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence." 20 C.F.R. § 404.1529(c)(3). As the undersigned's analysis describes below, what Plaintiff's argument in essence amounts to is that the Court should reweigh the evidence because it does not agree with the ALJ's analysis of such evidence and ultimate conclusion. Reweighing the evidence is not the role of this Court.

Although Plaintiff argues that the ALJ "cherrypicked findings that support his ultimate conclusion" and "mischaracterized the evidence," the ALJ actually considered all of the evidence and made a determination about the severity of Plaintiff's alleged symptoms. (Document No. 14, p. 14). Plaintiff asserts that the ALJ did not correctly evaluate his alleged asthma symptoms, particularly in light of his testimony and "the objective evidence [that] show[] he has a long history of uncontrolled asthma symptoms that are increased with physical activity." Id. at p. 15. This evidence, however, is outside of the relevant claim period under review: from May 2018 through December 2019. Indeed, it was in February *2015* "that the claimant's asthma was uncontrolled" – and, from 2014 through 2018, an ALJ already made a binding determination that Plaintiff is not disabled. See supra p. 5; (Tr. 23 (citing Tr. 530)).

During the relevant time period, Plaintiff's asthma condition, according to both non-objective evidence – his testimony – and objective evidence, improved. (Document No. 19, p. 20). The ALJ noted that Plaintiff testified that "he is able to walk as long as he has an inhaler," which is obviously non-objective evidence as it is Plaintiff's own testimony about how his symptoms affect his daily living. 20 C.F.R. § 404.1529(c)(3); (Tr. 23 (citing Tr. 80)). Plaintiff even said at

18

the hearing that if he's "breathing really heavy, [he'll] take the inhaler again, and [he's] usually okay." (Tr. 80). The ALJ was entitled to look to objective evidence to ensure that there was no contradiction between his subjective allegations of his symptoms and the objective evidence. The objective evidence suggests a different story than what Plaintiff argues in his brief about his asthma being disabling. As the ALJ notes, "[d]uring the relevant period," there was "no evidence of pulmonary exacerbation requiring emergency or inpatient treatment," and his "lungs [were] clear to auscultation, [and he had] no shortness of breath." (Tr. 24 (citing Tr. 735, 765)).

Further, with regard to Plaintiff's allegations that his mental health impairments, including his anxiety and depression, produced such severe symptoms as to be disabling, the ALJ adequately evaluated such allegations in light of the regulation's requirements. See (Document No. 14, pp. 14-15); 20 C.F.R. § 404.1529(c). The ALJ noted that Plaintiff took Zoloft and Buspar to control his mental health impairments, but highlighted that Plaintiff was not always "complian[t] with his medications" and took "them only 'as needed.'" (Tr. 25 (citing 1734)). A claimant's medication regimen is a piece of non-objective evidence that an ALJ can rely upon in evaluating a Plaintiff's alleged symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ also highlighted "that both the claimant and his treatment team felt he no longer needed the level of mental health care that he was receiving," which was within the relevant period. (Tr. 25 (citing Tr. 783)). Plaintiff's most recent treatment records from the Veterans' Administration "from November 2019 and February 2020 [showed that] despite some medication non-compliance, and alleged worsening symptoms of depression, the claimant also reported 'stable' mental health symptomology and his depression was described as 'in remission.'" (Tr. 25 (citing Tr. 1662, 1666, 1671, 1684)).

Evidently, then, the ALJ took into account Plaintiff's allegations about his debilitating mental health impairments, but he also considered other evidence, including Plaintiff's own

19

testimony, medication compliance history, and objective evidence to draw a conclusion about whether the symptoms of his mental health impairments were disabling. 20 C.F.R. § 404.1529(c)(3). Plaintiff's argument about "cherry-picking" is more akin to asking the ALJ to cite every piece of relevant evidence about his impairments and draw the same conclusion that he would have. See Reid v. Comm'r of Soc. Sec'y, 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" (internal quotations and citations omitted)). The ALJ, though, is tasked with "reconcil[ing] inconsistencies" between Plaintiff's testimony and "the medical evidence" – a role in which the Court plays no part. Frierson v. Saul, 5:19-CV-166-FDW-DSC, 2020 WL 9848709, at *2 (W.D.N.C. July 22, 2020). The ALJ's symptom evaluation was in line with the relevant regulation and thus legally correct.

## C.     ALJ's Treatment of VA Disability Determination

Plaintiff argues that "[t]he ALJ's explanation as to why he rejected Mr. Custodio's VA disability rating is not supported by persuasive, specific, and valid reasons, as required by long standing precedent." (Document No. 14, p. 19). Defendant, by contrast, argues that "[t]he ALJ thoroughly explained the differences between the VA's disability program and that of SSA and assessed [all of] the evidence in the record, including Plaintiff's testimony, to explain why he did not find the VA's disability rating persuasive."[4] (Document No. 17, p. 24).

---

[4] Defendant also makes an argument that even if the ALJ had not provided thorough explanation for why he deviated from the VA's disability determination, pursuant to the revised regulations, the ALJ was not required "to provide any analysis of the VA disability rating in his decision because the rating is another governmental agency's adjudicative finding based on its own rules." (Document No. 17, p. 22) (citing 20 C.F.R. § 404.1504). The new regulation, Defendant contends, is subject to Chevron deference. Id. at p. 23 (citing Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844 (1984)). For the reasons explained in the following paragraphs of the undersigned's analysis, the Court will not address this argument.

20

The relevant regulatory background on this issue is set forth in an order issued by the Honorable David S. Cayer in Wright v. Saul:

> In January 2017, the Social Security Administration rescinded Social Security Ruling 06-03p, which required that 'evidence of a disability decision by another governmental agency or nongovernmental agency cannot be ignored and must be considered.' The Ruling was rescinded effective March 27, 2017. 82 Fed. Reg. 5844; 80 Fed. Reg. 15132 (March 27, 2017). The replacement Ruling states that for disability claims filed after March 27, 2017, the Social Security Administration 'will not provide any analysis in its determination or decision about a decision made by any other governmental agency about whether you are disabled, employable, or entitled to any benefits.' 20 C.F.R. § 404.1504. The new Ruling also states that the Social Security Administration will still 'consider all of the supporting evidence underlying the other governmental agency's decision.' Id.

3:20-CV-201-DSC, 2021 WL 1124784, at *2 (W.D.N.C. Mar. 24, 2021). Prior to the regulation revision, the Fourth Circuit stated that "in making a disability determination, the SSA [Social Security Administration] [had to] give substantial weight to a VA disability rating." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012). In a later decision, the Fourth Circuit indicated that when the Social Security Administration deviates from another administrative agency's disability determination, an ALJ "must give persuasive, specific, valid reasons for doing so that are supported by the record." Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018).

There is thus an open question – that Defendant's brief addresses – regarding whether the Fourth Circuit's Bird decision is still controlling law in light of the revised regulation. See (Document No. 17, pp. 22-23). Since the new regulation specifies that the Social Security Administration "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled," there is thus a conflict with Bird, which *requires* the ALJ to give substantial weight to

the VA's disability determination unless there is sufficient explanation for a different outcome.  20

C.F.R. § 404.1504;  Bird, 699 F.3d at 343.  The Fourth Circuit has not addressed this "incongruity."

Rogers v. Comm'r of Soc. Sec., 3:20-CV-206-RJC-DSC, 2022 WL 135310, at *3 (W.D.N.C. Jan.

13, 2022), *declining to adopt memorandum and recommendation*, 2021 WL 7185233 (W.D.N.C.

Mar. 23, 2021), *appeal docketed*, No. 22-1264 (4th Cir. Mar. 14, 2022).  Some courts have found

that the regulation displaces Bird, while others have found that Bird remains good law.  See id.

(collecting cases); Drye v. Kijakazi, 1:21-CV-135-MOC, 2022 WL 1446672, at *4-*5 (W.D.N.C.

May 6, 2022) (holding that the regulation displaces prior Fourth Circuit precedent).

The undersigned will not enter the fray and make a determination as to whether 20 C.F.R.

§ 404.1504 displaces Bird.  Instead, here, even though the governing regulation is 20 C.F.R. §

404.1504 since the claim was filed after March 27, 2017, Bird's requirements are still satisfied.  In

other words, even if the regulation applies but does *not* displace Bird and Bird is still good law,

Bird's requirements are satisfied.  The ALJ in this case provided various reasons that were specific

and valid to explain the difference in outcome from the VA disability determination:

> Overall, the longitudinal record documents conservative treatment.
> There is no evidence of hospitalization due [to] uncontrolled
> symptoms, episodes of decompensation, uncontrolled emotions or
> social avoidance.  Further, with regard to his mental health
> impairments, his treatment providers noted mostly normal mood and
> affect, cooperative behavior, appropriate eye contact, appropriate
> hygiene and grooming, and intact thought process with no suicidal
> or homicidal ideation.

(Tr. 29 (citing Tr. 505, 801, 1666, 1668, 1671, 1686)).

Given that the ALJ cited to, thoroughly explained his deviation from, and "considered [the]

VA rating and underlying medical evidence," his decision both meets the requirements for

consideration of another agency's disability determination under both the revised regulation at 20

22

C.F.R. § 404.1504 and under <u>Bird</u>.  (Tr. 29).  Thus, in contrast to Plaintiff's contentions, there was no error on the part of the ALJ requiring remand.

## IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971);  <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will direct that the Commissioner's decision be affirmed.

**IT IS, THEREFORE, ORDERED** that:    Plaintiff's "Motion For Summary Judgment" (Document No. 13) is **DENIED**;   the "Defendant's Motion For Summary Judgment" (Document No. 16) is **GRANTED**;  and the Commissioner's determination is **AFFIRMED**.

**SO ORDERED**.

Signed: June 22, 2022

David C. Keesler
United States Magistrate Judge